**UNREDACTED TRANSCRIPT**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA . | |
| . | |
| VERSUS . | NO. 1:08-CR-10102-JDB-1 |
| . | JACKSON, TENNESSEE |
| MICHAEL R. LEMONS . | 2:00 P.M. |
| . | |
| . . . . . . . . . . . . . . . . | |

APPEAL TRANSCRIPT
SENTENCING HEARING PROCEEDINGS
MAY 19, 2010

BEFORE THE HONORABLE J. DANIEL BREEN,
UNITED STATES DISTRICT COURT JUDGE

APPEARANCES

| | |
|---|---|
| FOR THE UNITED STATES: | MR. JERRY R. KITCHEN |
| | ASSISTANT U. S. ATTORNEY |
| | 300 FEDERAL BUILDING |
| | 109 SOUTH HIGHLAND AVENUE |
| | JACKSON, TENNESSEE 38301 |
| FOR THE DEFENDANT: | MS. M. DIANNE SMOTHERS |
| | ASSISTANT FEDERAL DEFENDER |
| | 105 FEDERAL BUILDING |
| | 109 SOUTH HIGHLAND AVENUE |
| | JACKSON, TENNESSEE 38301 |
| COURT REPORTER: | CHRISTINE MARTIN, OCR, RPR |
| | P. O. BOX 10373 |
| | JACKSON, TENNESSEE 38308 |

1     (Defendant present)

2     **THE COURT**: All right, we're back in the matter
3 that the court had before it last week, I believe, in U. S.
4 versus Michael Lemons, 08-10102. The court had imposed a
5 sentence in this case in Mr. Lemons' situation of 150
6 months. The government indicated some disagreement with
7 the court, and that's not necessarily dispositive as far as
8 I'm concerned because usually there's one litigant or the
9 other that's disappointed or disagrees with the court on
10 many occasions. However, the court as I oftentimes do, and
11 try to do it beforehand, but did do so, did conduct some
12 additional research on the issue here. There was no plea
13 agreement, certainly, as the court had mentioned the last
14 time. But based upon the court's review of the law in this
15 area and determination that Mr. Lemons did qualify as an
16 armed career criminal, that the sentence in this case,
17 because of that finding, enhanced his sentence to a term of
18 not less than fifteen years. Of course, that would be
19 basically a restricted range of 180 months.

20     I will say the court is not unsympathetic with
21 Mr. Lemons' plight. I think I mentioned that previously.
22 And in the court's almost twenty years on the bench, I have
23 made decisions on many occasions based upon a person's
24 prior history, criminal history particularly, but their
25 prior history, whether that was a good history or a bad

1   history.  Mr. Lemons has had some involvement with the
2   criminal justice system some ten-plus years ago, seemed to,
3   at least in the court's mind -- I believe I said this when
4   we met last time, that he seemed to be making maybe a
5   movement away from that or at least he hadn't been
6   arrested, so that's encouraging.  On Mr. Lemons' behalf, I
7   think that's encouraging to the court.
8              But with all of that said and with all of my
9   determination otherwise, I am constrained, I believe, by
10  the statute that the court finds that Mr. Lemons is subject
11  to, and I think I have no other choice but to sentence him,
12  basically, again and reimpose what is the mandatory minimum
13  sentence of 180 months in this case.  I don't do that with
14  any satisfaction, but I'm afraid that's what I'm going to
15  have to do in this case.
16             Yes, ma'am?
17             **MS. SMOTHERS**:  May I address the court, Your
18  Honor?
19             **THE COURT**:  Yes, ma'am.
20             **MS. SMOTHERS**:  And as Your Honor indicates,
21  it's an unusual situation.  I spoke this morning by phone
22  just briefly with Mr. Powell to make him aware, in light of
23  Your Honor's instruction for us to return back and the
24  judgment not having been entered --
25             **THE COURT**:  No, it has not been.

1       **MS. SMOTHERS:**  -- as I understand it.  Yes,
2  sir.
3            And I'll offer, Your Honor, there's no
4  authority that I can find in favor of the position I'm
5  about to state, but I offer it because -- knowing we're
6  heeding to Cincinnati either way on other issues, I want to
7  preserve this and note it for the record.  And I told Mr.
8  Powell I don't think it's anything we need to present proof
9  on.  I wanted to submit -- and this is some discovery
10 documents that the government provided us.  It's basically
11 Mr. Lemons' statement, written statement, rights waiver,
12 and then a very brief one-sentence statement from the
13 officer, Mr. Capps, or Officer Capps, that sold him the
14 gun.  And there's no dispute either side on that.
15           But I wish to raise in support -- and again, it
16 would be a statutory factor, a 3553 factor, if we can plow
17 some new ground, so to speak, in another court in relation
18 to the sentencing issue.  There's no dispute Mr. Lemons
19 possessed the firearm.  But in light of the language in his
20 statement, how he came to have the gun and receiving it
21 from Officer Capps, who still is, as far as I know, but at
22 that time was a sheriff's deputy, and his discussions with
23 Officer Capps prior to that transfer that, well, it's a
24 long gun.  We think it's okay for you to have a long gun
25 probably because of the age of the convictions, and under

1  state law I think that's probably a correct statement.
2  After ten years, it's my understanding the prohibition
3  under Tennessee state law can be dealt with as far as a
4  hunting gun or a long gun but not a handgun.  It doesn't
5  affect federal law, unfortunately.
6  But I wish to argue on Mr. Lemons' behalf --
7  and again, the proof we're submitting is the -- it's page
8  21 through 25, they're numbered at the bottom corner, of
9  the -- the Bates number of the discovery material.
10 Basically, on his behalf, a -- at least a partial
11 entrapment defense.  And again, not -- not as to guilty.
12 He's never disputed possession of the firearm.  I've
13 researched and looked and looked and looked, and I cannot
14 find any authority that would allow Your Honor at this
15 point to go below the statutory minimum in light of, at
16 least what our offer is, a partial entrapment.  And I don't
17 know that it's what you standard -- what you normally think
18 of as sentencing entrapment, which is more of an undercover
19 sting where we want a certain kind of drug because we can
20 increase the penalty.  That is not the relationship with
21 these two men.  They were acquaintances, and it had nothing
22 to do with any undercover or any police work that I can
23 tell.  This appeared to be an individual transfer, but he
24 was law enforcement.  And Mr. Lemons' statement indicates
25 that they did have a brief discussion about that, it being

1  okay or them thinking it was okay for him to have a long
2  gun.
3           And I offer that to the court at this point to
4  preserve that for the record so that we can at least
5  attempt to raise that in a higher court in relation to the
6  3553 factors.  Again, I've not -- I stand here with the
7  documents, but I've not been able to find case authority,
8  to date, anywhere in the U. S. that supports those
9  statutory factors, supporting that, but I do want to offer
10 that as another -- not an objection, if you will, but as
11 another statutory ground that we would request the court to
12 consider a below-statutory sentence in light of what we
13 offer is the seller in this case, a law enforcement member,
14 although he was not working, it's not an undercover sting
15 type of thing at all.  But with that persona and that
16 position, if you will, *vis-a-vis* Mr. Lemons, that that gave
17 him a belief or allowed him to have a belief or security in
18 the transaction that ultimately turned out to be incorrect,
19 at least under federal law at the time.
20          So we're asking Your Honor to consider a
21 below-statutory sentence based upon at least partial
22 entrapment in the transaction itself.  But again, I have no
23 authority to offer.  I'm raising that to preserve that for
24 the record.
25          **THE COURT**:  Would you like to file that?

1      **MS. SMOTHERS**: Yes, sir, if we might, just as a
2 collective -- It's Bates number 21 through 25.  They're
3 numbered on the front and the back.
4      **THE COURT**: All right, go ahead and mark that.
5 Is that exhibit 1?
6      **THE CLERK**: It will be exhibit number 5.
7      **THE COURT**: Oh, exhibit number 5.  All right,
8 go ahead and mark that for purposes of the record, please.
9      **THE CLERK**: Marked as exhibit number 5,
10 collective.
11      **MS. SMOTHERS**: That's the only additional
12 material we wanted to present, Your Honor.
13      **THE COURT**: Did you want to respond in any
14 kind, Mr. Powell, to --
15      **MR. POWELL**: No, Your Honor, no more than to
16 say that given the court's ruling today, the argument would
17 change nothing.
18      **THE COURT**: Well, I was trying to think when
19 you were talking, Ms. Smothers, that there's a provision, I
20 think, in civil law, if my memory serves me, called
21 detrimental reliance.  That sounds about the closest thing
22 that I can think of.
23      **MS. SMOTHERS**: Yes, sir.
24      **THE COURT**: I think there are other --
25 regretfully, there have been other instances in this court,

1   not particularly with this judge but within this court, of
2   erroneous or inaccurate information being provided to a
3   person who otherwise didn't appear to be wanting the
4   firearm or the gun for anything other than maybe for
5   protection or was trying to get a job or doing a job that
6   maybe needed a little bit of protection, certainly nothing
7   nefarious or that this individual was going to use this gun
8   in conjunction with any other criminal offense.  At least
9   that's the impression that I've been given on some of the
10  other aspects.
11          I wish there was -- you know, I wish there was
12  some segment of the law that would -- like a safety valve
13  or a safety net or something like that that would provide
14  the court some room to consider that type of situation and
15  to provide you some type of relief, but I'm afraid that I
16  am unaware of anything on the criminal side that would
17  provide a defense or a basis to warrant a departure, you
18  know.  And I think my proverbial hands are tied with the
19  statute as it presently stands.  So I guess -- if you want
20  to say it for the record, I guess I overrule your request.
21          Is there a necessity that I go through all of
22  the other factors again?  If you wish me to, I'll do that.
23  I don't --
24          **MS. SMOTHERS**:  We'll be obtaining that
25  transcript.  I'm sure they're clear from the earlier

1   proceeding.  I can't see any need to recite those again.
2            **MR. POWELL**:  Yes, sir.
3            **THE COURT**:  The rest of the judgment will
4   remain the same.  I believe I placed him on three years
5   supervised release, a $100 special assessment, no fine.
6            Yes, ma'am?
7            **MS. SMOTHERS**:  I'm sorry.  He reminded me of
8   something.  I apologize, Your Honor.
9            **THE COURT**:  Okay.
10           **MS. SMOTHERS**:  Just to clarify, the only other
11  request I think we had made, other than being housed close
12  to home, obviously, was in light of the time -- He has
13  remained in jail since he was arrested on the outstanding
14  warrant, and I mentioned the paragraphs in my earlier
15  comments when we were here last.  We would ask that Your
16  Honor state as part of this judgment that he be given
17  credit on the federal sentence for all the time he has
18  served in any facility.  Right now he's sitting in Obion
19  County as a federal detainee.  But those state matters, the
20  violation of probation, I think he's actually cleared that
21  time now as far as Tennessee is concerned.  But we had
22  asked Your Honor to -- in light of, again, the unusual
23  circumstances of this case -- and he has been in jail since
24  the date of his arrest.  I think the report shows that.
25  Whatever date the firearm was actually found at his

1   residence, he's not been home since then.  But we'd ask for
2   Your Honor to rule that the Bureau -- if the court would
3   instruct in the judgment that the Bureau of Prisons is to
4   give him credit from the date of his arrest through the
5   present, until the time he lands at a Bureau facility.
6   Again, just in light of the total situation we're looking
7   at here, that would not -- in our position, it would not
8   change the fact he has a 15-year sentence here, but at
9   least it would start his clock running sooner.
10              **THE COURT**:  Mr. Powell?
11              **MR. POWELL**:  Well, Your Honor, at the last
12  argument I think I stated previously that it may mitigate
13  the harshness of what's perceived as an unduly harsh
14  sentence.  However, be that as it may, there's just no
15  basis to give the defendant credit on this sentence for the
16  service of the violation of probation, which was a sentence
17  in a totally unrelated matter.  There's no connection
18  between that prior Tennessee probated sentence and the
19  possession of the firearm in this case.
20              **THE COURT**:  As I recall from the previous
21  hearing we had, that was the purpose or that was the basis,
22  as I understand, of Mr. Lemons' -- of the officers making
23  the sweep, I think, wasn't it, in going to his residence?
24              **MS. SMOTHERS**:  Yes, sir.
25              **THE COURT**:  Was the probation violation?

1          **MS. SMOTHERS**:  Yes, sir.

2          **THE COURT**:  Ms. Smothers, before I get back to

3    Mr. Powell, please remind me in terms of what occurred.

4    Did he go to court to have the matter, the probation

5    matter, considered or resolved, or what exactly -- remind

6    me what exactly happened.

7          **MS. SMOTHERS**:  Well, according to the

8    presentence report, it indicates, Your Honor, that June

9    28th of '08, his probation was revoked.  And I'm reading

10   from paragraph 27 of the presentence report.  He was simply

11   ordered to serve the original sentence in that case, which

12   was the Madison County case, 94-1472, and that his sentence

13   would expire -- fully expire July 9, 2010.

14         It also indicates that sentence was to be

15   consecutive to another Madison County sentence, and I'm not

16   even sure I can find that one.  That's the theft.  It's

17   paragraph 29.  And again, they both are revoked June 28th

18   of '08 to serve the original sentence.

19         He's been in custody, as I indicated, since he

20   was actually found at his apartment when the sweep

21   occurred.

22         **THE COURT**:  But that was, again, relative -- or

23   that was as it relates to the probation.

24         **MS. SMOTHERS**:  Yes, sir

25         **THE COURT**:  Which was the --

1    **MS. SMOTHERS**: A prior existing warrant from
2    '96. Yes, sir.
3    **THE COURT**: Right. So he was taken into
4    custody based upon that outstanding warrant, as I
5    understand.
6    **MS. SMOTHERS**: Yes, sir. It appears -- and I'm
7    looking -- Let me look to the front of the report.
8    Sometimes it will -- okay, just -- He first appeared
9    January 20th of '09 here, but obviously -- September 15th
10   of '08 he was indicted. He's obviously sitting at that
11   point in, I think, the Madison County jail.
12        (Attorney/client conference)
13   **MS. SMOTHERS**: He was already in DOC,
14   apparently. He was brought or borrowed, if you will, by
15   the marshals from DOC, had signed the warrant.
16   **THE COURT**: Well, if he was, for example,
17   writted over here for purposes of this case --
18   **MS. SMOTHERS**: Yes, sir.
19   **THE COURT**: -- then it seems to me that once he
20   came into federal custody, he might be entitled to some
21   credit for that period of time. But I don't see how I
22   could -- I guess my general rule in terms of requests for
23   credit given, and I've seen cases to this effect, is that
24   the BOP makes the determination about that aspect, and I
25   hesitate to tread on their determination. Now, you know,

1   obviously if Mr. Lemons at some point, you know, disagrees
2   with what credit the BOP does give him, he can go through
3   an administrative process, and it may end up coming back
4   here.  But I'm just hesitant to wade into that situation at
5   this point.  And certainly, I'm not inclined to -- even if
6   I was, I'm not inclined to direct the BOP to grant credit
7   for the original service starting in June of '08.  I think
8   he very well may be entitled, as I said, to some credit
9   from the time he came into federal custody until when he
10  officially starts serving his sentence.  So I'm just -- I
11  respectfully decline to direct that at this point.
12          But obviously Mr. Lemons will have the
13  opportunity to inquire into and ask the BOP to give him
14  credit for certain periods of time.  And if that doesn't
15  meet his satisfaction or his belief that that's what he's
16  entitled to, then he can go through that process and, as I
17  said, possibly end up back in this court or some other
18  court to give him that credit, so --
19          **MR. POWELL**:  Perhaps the proper forum would be
20  the state court and not this court, as it is their sentence
21  that he's currently serving.
22          **THE COURT**:  Yes, it is.  That's certainly an
23  alternative suggestion that I think may be well heeded in
24  that regard; yes.
25          **MR. POWELL**:  If I could, just one last thing,

1  Your Honor?

2  **THE COURT**: Yes, sir.

3  **MR. POWELL**: The court expressed some
4  sentiments regarding the sentence in this case. And as I
5  have expressed to the court on prior occasions, the
6  government is not unmindful of those concerns. And those
7  considerations, for Mr. Lemons' benefit, go from
8  prosecutors and defenders that ply their trade in court,
9  district court judges and all the way to the United States
10 Supreme Court. And we've had the recent situation where
11 Justice Scalia, while lamenting about the problems with --
12 this is just one of them, but the myriad of problems with
13 the armed career criminal statute, has said that the
14 solution lies in Congress.

15 And I understand Ms. Smothers' concern and
16 arguments. We discussed this earlier today when she
17 telephoned me and advised me she wanted to make this
18 argument -- or continue the hearing so that she could make
19 the argument, and I said, you know, that wasn't necessary.
20 But again, I think this is just another one of those
21 situations that Justice Scalia was addressing, and this is
22 a matter that Congress must resolve, and none of us can do
23 anything about that until Congress acts.

24 **THE COURT**: Yes, sir.

25 All right, anything else either by way of

```
 1   sentencing or other matters that I failed to address on
 2   behalf of the government, Mr. Powell?
 3              MR. POWELL:  No, Your Honor.  Thank you.
 4              THE COURT:  Ms. Smothers, anything else with
 5   regard to sentencing or any other objections that I failed
 6   to address on behalf of the defendant?
 7              MS. SMOTHERS:  No, sir, Your Honor.
 8              THE COURT:  I did mention the 500-hour drug
 9   program?
10              MS. SMOTHERS:  Yes, sir.
11              THE COURT:  Everything that I put in the last
12   judgment, I'm going to replicate in the judgment that --
13   well, there was no judgment because it was never entered,
14   but I'm talking about the judgment that is going to be
15   entered now.
16              And for the record, you will have fourteen days
17   to appeal this court's determination.  I want to make that
18   clear for the record as well.
19              MS. SMOTHERS:  Yes, sir.
20              THE COURT:  All right, folks, unless there's
21   anything else at this time, Mr. Lemons, you'll be remanded
22   to the custody of the marshal's office.  Good luck to you,
23   sir.
24              All right, let's adjourn court, please.
25           (Proceedings concluded at 2:25 p.m.)
```

USA v. MICHAEL R. LEMONS
NO. 1:08-CR-10102-JDB-1

1       REPORTER'S CERTIFICATION

2       I certify that the foregoing is a correct transcript

3   from the record of proceedings in the captioned matter in

4   the United States District Court, Western District of

5   Tennessee, Eastern Division.

6

7                               **s**/Christine Martin, OCR

8

9                               July 8, 2010

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SENTENCING HEARING PROCEEDINGS
MAY 19, 2010
UNREDACTED TRANSCRIPT